IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BERNARD BRIDGEMAN,

        Plaintiff,

vs.

HECTOR GARCIA and JOHN O'BRIEN,

        Defendants.

Case No. 15-cv-218-JPG-SCW

## MEMORANDUM AND ORDER

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Bernard Bridgeman filed his complaint alleging that defendant doctors Hector Garcia and John O'Brien were deliberately indifferent to his serious dental needs. This matter is currently before the Court on the defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 33). Bridgeman has filed a response (Doc. 36) in opposition to the motion. Based on the following, the Court will deny the defendants' motion for summary judgment.

### FACTUAL BACKGROUND

Bridgeman alleges that Garcia and O'Brien were deliberately indifferent to his serious medical needs, specifically his need for a bone graft and dental implants after surgery on his mouth. As narrowed by the Court's threshold order (Doc. 8), Bridgeman alleges that he underwent oral surgery on May 2, 2012, to remove a tumor in his mouth. This procedure was completed by an outside surgeon who is not a party to this case. Due to the nature of the surgery, the surgeon was required to remove eight teeth and some bone along with the tumor. Bridgeman alleges that at the time he was told by the surgeon that after his mouth healed, he would require implants and a bone graft. According to Bridgeman, the surgeon advised that the implants would

secure the bone graft over the long term, and without the implants, the bone graft would shrink and fall out. Bridgeman alleges that Garcia and O'Brien denied authorization for the bone graft and implants. Specifically, O'Brien was one of the doctors who denied the requested treatment and Garcia was the head physician who made the final decision not to authorize the treatment. The record reflects that Bridgeman received the bone graft in February 2014 but was denied an implant, instead being ordered a partial for use after his mouth was fully healed from surgery.

In the defendants' pending motion for summary judgment, they argue that Bridgeman failed to exhaust his administrative remedies by failing to appeal his grievance to the Administrative Review Board ("ARB") (Doc. 33). In his response, Bridgeman indicates that he did file his grievance with the ARB but that the ARB denied the grievance as untimely (Doc. 36).

Bridgeman filed a grievance dated September 11, 2013, which his counselor received on September 13, 2013 (Doc. 34-1, p. 4-5). The grievance indicates that Bridgeman had had surgery on his mouth on May 2, 2012, and was told that after the surgery he would require reconstructive surgery including a bone graft and implants. Bridgeman's grievance indicates that he has "now" been told that while the bone graft was approved, the implants were not approved. Bridgeman indicated in his grievance that he was still without teeth or bone graft and that he had not seen the outside dentist in over three months. The counselor denied the grievance, indicating that Wexford had denied both the bone reconstructive surgery and the implants. Instead, Bridgeman would be given a partial, which would be completed in the following few weeks. The counselor responded to and returned the grievance to Bridgeman on September 14, 2013.

Bridgeman next sent his grievance to the grievance officer (Doc. 34-1, p. 3). The

grievance was received on October 3, 2013, and reviewed on March 31, 2014.[1] By the time the grievance officer reviewed the grievance, it was noted that Bridgeman had had follow-up surgery despite the counselor's initial finding that Wexford had denied the surgery. Bridgeman received bone grafting in February 2014 and had a follow-up with dental on March 28, 2014. Dental indicated that once Bridgeman's mouth healed from the surgery, he would be provided a partial. The grievance officer denied the grievance, and the chief administrative officer ("CAO") concurred on April 9, 2014.

The defendants argue that after Bridgeman received his response from the CAO, he did not forward the grievance to the ARB. The defendants are incorrect. The Court notes that while the defendants obtained grievance records from Danville Correctional Center, where Bridgeman is currently housed, they did not obtain records from the ARB which would include all appeals. Bridgeman, on the other hand, has provided a copy of his grievance and the response from the ARB. Bridgeman's records indicate that the he appealed his grievance in April 2014[2] and the grievance was received by the ARB on April 23, 2014 (Doc. 36, p. 5, 7). The ARB denied the grievance as untimely. The ARB noted that Bridgeman's initial grievance indicated that Bridgeman last spoke with the outside dentist three months prior to filing his grievance, which the ARB indicates would have been June 13, 2013. As Bridgeman waited until September 11, 2013,

---

[1] The Court notes a discrepancy in the record as to when the grievance officer received the grievance. The counselor did not return the grievance to Bridgeman until September 14, 2013, but the grievance officer report indicates that the grievance office received the grievance on September 3, 2013. However, the received-stamp on the front of the grievance indicates it was received by the Grievance Office on October 3, 2013, so the Court assumes the September 3, 2013, date is a typographical error and should be October 3, 2013. In any case, the grievance officer ruled on the grievance, presumably determining that it was timely filed.

[2] Although the Court is unable to tell the exact date of the appeal from the grievance, Bridgeman indicates that it was April 20, 2014.

3

to file a grievance regarding that visit, the ARB deemed the grievance untimely.

### LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion'"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Id.* at 740-41. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set

forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." *Doss v. Gilkey,* 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).

A. **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections ("IDOC"), Bridgeman was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code § 504.800 *et seq*. The grievance procedures first require inmates to speak with the counselor about their complaint. 20 Ill. Admin. Code § 504.810(a). Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the grievance officer within 60 days of the incident. *Id.* The grievance form must:

5

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code § 504.810(a)(b). "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer . . . [who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.830(d). If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." 20 Ill. Admin. Code § 504.850(a). "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code § 504.850(e). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code § 504.850(f).

## ANALYSIS

The defendants argue that they are entitled to summary judgment because Bridgeman failed to exhaust his administrative remedies by failing to appeal his grievance to the ARB. The

defendants argue that there is no evidence that Bridgeman submitted his grievance to the ARB, but the Court notes that the defendants' exhibits lack complete information because counsel only subpoenaed grievance information from Danville Correctional Center (Doc. 34-1, p. 2). Grievance information from the prison institution would only include grievances filed at that level, not at the ARB level. Further, Bridgeman has provided information that he received from the ARB regarding his September 11, 2013, grievance. Bridgeman's exhibits indicate that the ARB received Bridgeman's grievance on April 23, 2014. Thus, the defendants are incorrect in their finding that Bridgeman failed to submit his grievance to the ARB. They have further waived any other objection to Bridgeman's compliance with the exhaustion procedure by failing to raise it in their motion.

The Court notes that the ARB returned Bridgeman's grievance because it was filed out of time. It made this finding based on a statement in Bridgeman's September 11, 2013, grievance indicating that he last saw the dentist three months prior to filing his grievance, which the ARB calculate to be approximately June 13, 2013. As the ARB found that Bridgeman was complaining about an appointment which occurred on June 13, 2013, his grievance filed nearly three months later on September 11, 2013, was well past the sixty-day time limit for submitting a grievance to the grievance officer and, thus, was untimely. 20 Ill. Admin. Code § 504.810(a).

While the ARB may properly decline to hear a grievance when a prisoner has not met the grievance process requirements, including time limits set out by the administrative code, and such a denial is usually consider a failure to exhaust, *see Dole*, 438 F.3d at 809; *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (quoting *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) (internal citations omitted)), the Court finds that in this case the ARB was incorrect in denying Bridgeman's grievance as untimely. While Bridgeman's grievance does indicate that he last saw

7

the dentist three months prior to filing his grievance, he complains in his grievance about the denial of bone graft and implant treatment which had only "now" learned Wexford had denied. Thus, when Bridgeman filed his grievance on September 11, 2013, he was complaining about a decision by Wexford that he had only then learned about, not a decision or meeting that had taken place three months before. The Court, thus, finds that the ARB was incorrect in denying Bridgeman's grievance as untimely as Bridgeman was timely complaining about a decision made by Wexford doctors. As such, the ARB should have ruled on the merits of Bridgeman's grievance instead of declining to hear it on procedural grounds. Because the ARB improperly chose not to rule on the grievance, the Court finds that Bridgeman had done all he could at that point to exhaust his administrative remedies by giving the ARB a fair opportunity to review his claims in a timely manner. *See Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011). Thus, Bridgeman properly exhausted the administrative remedies available to him.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the defendants' motion for summary judgment (Doc. 33).

**IT IS SO ORDERED**.
**DATED: June 21, 2016**

                                               s/ J. Phil Gilbert
                                               **J. PHIL GILBERT**
                                               **DISTRICT JUDGE**